1 | Kevin M. Sadler (SBN 283765)
BAKER BOTTS L.L.P.
2 | 1001 Page Mill Road
Building One, Suite 200
3 | Palo Alto, California 94304-1007
(650) 739-7518
4 | kevin.sadler@bakerbotts.com
*Attorney for Amicus Curiae Texas SO2 Working Group*
5 |
Leslie Sue Ritts (pro hac vice forthcoming)
6 | RITTS LAW GROUP, PLLC
620 Fort Williams Parkway
7 | Alexandria, Virginia 22304
(703) 823-2292
8 | LSRitts@rittslawgroup.com
*Attorney for Amicus Curiae NEDA/CAP*
9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **NORTHERN DISTRICT OF CALIFORNIA**

12 | **SAN FRANCISCO DIVISION**

13 |

| | |
|---|---|
| SIERRA CLUB and NATURAL RESOURCES DEFENSE COUNCIL, | **Case No. 3:13-cv-03953 SI** |
| Plaintiffs, | ***AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFF-INTERVENOR'S RESPONSE IN OPPOSITION TO JOINT MOTION TO ENTER CONSENT DECREE** |
| v. | |
| REGINA MCCARTHY, in her official capacity as Administrator of the United States Environmental Protection Agency, | **Date: October 17, 2014**<br>**Time: 9:00 a.m.**<br>**Courtroom: 10, 19th Floor**<br>**Judge: Hon. Susan Illston** |
| Defendant. | |

The National Environmental Development Association's Clean Air Project's ("NEDA/CAP") and the Texas SO2 Working Group, through their undersigned counsel, submit this *Amicus Curiae* Brief in Support of Plaintiff-Intervenors' Response in Opposition to Joint Motion to Enter Consent Decree.

**<u>Statement of the Issue to be Decided</u>**

Whether the Court should decline to enter the proposed consent decree and dismiss the

case for lack of jurisdiction pursuant to Clean Air Act § 307(b)(1) and (2), 42 U.S.C. § 7607(b)(1) and (2).

### Statement of Facts

**I.       The SO2 Designation Rule**

On August 5, 2013, EPA promulgated a final rule in which it both (i) designated certain areas as in nonattainment of the new primary National Ambient Air Quality Standard for sulfur dioxide ("SO2 NAAQS") and (ii) announced a decision to defer designations as to remaining areas.  78 Fed. Reg. 47,191 (Aug. 5, 2013) ("SO2 Designation Rule").  In the final rule's preamble, EPA explained that it had developed a "strategy for the future SO2 designations" that would be the subject of future regulatory activity and would be implemented in a "commonsense" fashion.  *Id*. at 47,193-94.  The preamble stated:

> In separate future actions, the EPA intends to address the designations for all other areas for which the agency is not yet prepared to issue designations and that are consequently not addressed in this final rule. With input from a diverse group of stakeholders, the EPA has developed a comprehensive implementation strategy for the future SO2 designations actions that focuses resources on identifying and addressing unhealthy levels of SO2 in areas where people are most likely to be exposed to violations of the standard. . . . The EPA plans to continue to work closely with state, tribal and local air quality management agencies to ensure health-protective, commonsense implementation of the 1-hour SO2 NAAQS.

*Id.*  There is no question that the SO2 Designation Rule is "nationally applicable;" the designated areas encompass 16 states, and the areas for which EPA deferred designations are also scattered throughout the country.  *See id.*

**II.      The Pending Petition in the Court of Appeals**

Sierra Club and Natural Resources Defense Council ("NRDC") petitioned for review of

the SO2 Designation Rule in the Court of Appeals for the District of Columbia; the appeal remains pending in that court.  *See Sierra Club v. EPA*, No. 13-1262 (D.C. Cir. Oct. 3, 2013). Sierra Club and NRDC specifically challenged EPA's deferral of designations, characterized it as a "final action," and described the issue for appellate review as follows:

> In the final action under review, EPA promulgated designations for only 29 areas, and did not promulgate any designation for any other areas. The question is whether EPA acted illegally and arbitrarily by failing to include sulfur dioxide designations for all areas of the country in the final action at issue here.

Non-Binding Statement of Issues for Petitioners at 1, *Sierra Club* v. EPA, No. 13-1262 (D.C. Cir. Nov. 4, 2013), Document No. 1464475.

**III.     The Proposed Consent Decree**

Sierra Club and NRDC also filed a complaint in this Court based on the SO2 Designation Rule, alleging that EPA was "in violation of its nondiscretionary duty under 42 U.S.C. §§ 7407(d)(1)(B) and (d)(2) to promulgate designations" and alleging jurisdiction based on 42 U.S.C. § 7604(a).  ECF No. 1 at *9.  The Court granted motions to intervene by seven states, each of which includes areas as to which EPA's final rule deferred designations.  See ECF No. 79.  The motion for entry of a consent decree was filed on August 8, 2014.  ECF No. 120.

Under the proposed consent decree, the Court would create three categories into which all the areas for which EPA deferred designations would be divided.  *See* ECF No. 120-2.  The decree further provides three different deadlines by which EPA must promulgate designations for, respectively, the areas assigned to each of the three categories.  *Id.*  Under the proposed consent decree, which category an area belongs to would depend on, among other things:

- Whether, as of a date 16 months from now, there are monitored violations of the new SO2 standard in the area during the preceding three years;

- Whether sources within the area emitted more than a specified level of  SO2  in 2012; whether any such sources are coal-fired power plants of a certain size that have announced that they will "cease burning coal;" and

- Whether by January 2017, the area is located in a state that has begun operating a new SO2 monitoring network "meeting EPA specifications in EPA's anticipated rulemaking," *i.e.,* meeting standards that have not yet been set.

*See id.* When EPA issues designations, how that date is determined, and what the designation is affect the industrial operations of NEDA/CAP's and the Texas SO2 Working Group's members.

NEDA/CAP and the Texas SO2 Working Group submitted public comments on the proposed consent decree addressing a number of reasons why the proposed decree is not only unfair and unreasonable, but contrary to fundamental principles of administrative law and due process. *See* Declaration of Zachary L. Craft, Decl. ¶ 2 (Attachment A). We focus below on one reason the Court should decline to enter the proposed decree—under the Clean Air Act, the Court lacks jurisdiction to do so.

<u>**Argument**</u>

**The U.S. Court of Appeals for the District of Columbia has exclusive jurisdiction over EPA's decision to defer 2010 SO2 NAAQS area designations.**

The Clean Air Act ("CAA") provides for judicial review of nationally applicable, final agency action exclusively in the Court of Appeals for the District of Columbia. 42 U.S.C. §7607(b)(1). Section 307(b)(1) of the CAA provides:

> A petition for review of . . . any other nationally applicable regulations promulgated, or final action taken by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia.

*Id.* Further, the CAA provides that "[w]here a final decision defers performance of any nondiscretionary statutory action to a later time," the deferral may be challenged in the Court of Appeals under Section 307(b)(1). 42 U.S.C. §7607(b)(2). Finally, the CAA provides that where an action is reviewable in the D.C. Circuit under Section 307(b)(1), the same action "shall not be subject to judicial review in civil . . . proceedings for enforcement." *Id.* District Courts lack jurisdiction even over legal issues pertaining to final agency decisions that are reviewable in the Court of Appeals, regardless of whether the issues arise from the statute governing the agency

1  action.  *See Cal. Dump Truck Owners Ass'n. v. Nichols*, 924 F. Supp. 2d 1126, 1139 (E.D. Cal.

2  2012) (citing *Palumbo v. Waste Techs. Indus.*, 989 F.2d 156, 160-61 (4th Cir. 1993)).  Thus, a

3  nationally applicable, final decision to defer performance of a nondiscretionary duty under the

4  CAA is reviewable only by the D.C. Circuit.

5          As both EPA and Plaintiffs have acknowledged, the SO2 Designation Rule is a "final

6  action" or a "final decision" that is nationally applicable.  In that final rule, EPA decided to defer

7  SO2 designations in certain areas.  As detailed above, the CAA provides that judicial review of

8  the SO2 Designation Rule lies exclusively in the D.C. Circuit.  The Rule is "not . . . subject to

9  judicial review" in an enforcement action in this Court.  *See* 42 U.S.C. §7607(b)(2).  The CAA's

10  plain language mandates exclusive jurisdiction over this action in the D.C. Circuit, where

11  Plaintiffs' petition for review remains pending.

12          Case law applying the CAA is in accord.  In *Maine v. Thomas*, the First Circuit held that

13  an EPA rulemaking promising further agency action to promulgate certain regulations amounted

14  to a "final action taken," which precluded maintenance of a citizen suit in the district court to

15  compel observance of nondiscretionary duties.  874 F.2d 883, 891 (1st Cir. 1989).  At issue was

16  EPA's decision to defer promulgating regional haze regulations pursuant to CAA § 169, 42

17  U.S.C. § 7491.  Id. at 885-86.  EPA instead stated in the preamble to the rulemaking that:

18                  Future phases will extend the visibility program by addressing

19                  more complex problems such as regional haze and urban plumes.

20                  We will propose and promulgate future phases when improvement

21                  in monitoring techniques provides more data on source-specific

22                  levels of visibility impairment, regional scale models become

23                  refined, and our scientific knowledge about the relationships

24                  between emitted air pollutants and visibility impairment improves.

25  45 Fed. Reg. 80,084, 80,086 (Dec. 2, 1980); *see also Maine,* 874 F.2d at 885.  Controlling in the

26  court's view was that the rulemaking made a "change in the status quo itself" that rendered its

27  promise ripe for review.  *Maine*, 874 F.2d 887.  The court also noted that EPA's decision to

28  postpone the regulations "was based on an extensive and published administrative record which

1    reflects citizen and agency concerns, the intent to defer, and a rationale based on [the lack of

2    adequate] technological and scientific information." *Id*. at 886 (internal quotations omitted).  *See*

3    *also Natural Res. Def. Council, Inc. v. Thomas*, 885 F.2d 1067, 1074 n.7 (2nd Cir. 1989)

4    (describing *Maine v. Thomas* as establishing that EPA regulations which "amount[ ] to the

5    Agency's promise to deal substantively with [a] matter in future rules and orders," constitute

6    "final action" immediately reviewable in a circuit court of appeals and precluding district court

7    jurisdiction (quoting *Maine v. Thomas*, 874 F.2d at 885)).

8         Similarly, in *Environmental Defense Fund v. Costle*, the district court held that EPA's

9    decision to delay implementing a new provision under the 1977 Amendments to the Clean Air

10   Act amounted to a "final decision," review of which rested exclusively with the court of appeals.

11   448 F. Supp. 89, 93 (D.D.C. 1978).  Finding a conflict between CAA § 165, 42 U.S.C. § 7475,

12   and other sections of the 1977 Amendments regarding the timing of implementation of

13   prevention of significant deterioration ("PSD") requirements, EPA deferred implementation of

14   Section 165.  *Id.* at 89.  Instead, EPA stated in the preamble to a proposed rulemaking that:

15            EPA has chosen not to make Section 165 effective immediately

16            upon enactment because it is not one of the Sections specified in

17            Section 168 [calling for immediate amendments to regulations

18            inconsistent with specified sections] . . . .  There is a substantial

19            legal argument, however, that Section 165 (a) was intended to be

20            immediately effective because it applies by its terms to sources

21            which commence construction "after the date of enactment" of the

22            1977 Amendments.   In light of the drafting inconsistencies

23            between Sections 165(a) and 168, EPA feels that the most prudent

24            course is to implement Section 165(a) as quickly as possible, but

25            through the rulemaking process.

26   *Id.* at 91-92 (quoting 42 Fed. Reg. 57,479 (Nov. 3, 1977)).   The court found that a final

27   rulemaking on Section 168 implicitly demonstrated that implementation of Section 165 would be

28   delayed, and that the preamble to the proposed rulemaking clearly stated and explained EPA's

1  decision to delay implementation of the new provision.  *Id*. at 93.  The court held that these

2  "interrelated announcements of the Administrator . . . mark[ed] his final decision not to

3  implement" the provision.  *Id.*  Because EPA's final decision was nationally applicable, the D.C.

4  Circuit had exclusive jurisdiction.  *Id.*

5       Since the decisions in *Maine and Environmental Defense Fund*, Section 307(b)(2) was

6  amended to expressly vest in the court of appeals challenges to "a final decision [that] defers

7  performance of any nondiscretionary statutory duty to a later time."  42 U.S.C. § 7607(b)(2); see

8  Clean Air Act Amendments of 1990, Pub. L. No. 101-549, sec. 707(h), § 307(b)(2), 104 Stat.

9  2399, 2683-84 (1990).  The current provision has been described as follows:

10      Each provision of the Clean Air Act that authorizes citizen suits

11      has a specific purpose. For example, § 7607(b)(2) permits an

12      action which challenges the deferral of a nondiscretionary duty

13      pursuant to § 7607(b)(1). If such action is successful, the deferral

14      can be vacated. Once vacated, an action to compel performance of

15      the underlying nondiscretionary duty can be maintained under §

16      7604(a)(2).

17  *Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 555 (D.D.C. 2005) (internal citations

18  omitted).  *Compare Portland Cement Ass'n v. EPA*, 665 F.3d 177, 194 (D.C. Cir. 2011) (finding

19  no jurisdiction under Section 7607(b)(2) where it was unclear whether EPA had a

20  nondiscretionary duty to regulate a new pollutant and nothing in the rule indicated a final

21  decision).

22       Here, EPA made a final decision to defer 2010 SO2 NAAQS area designations when it

23  issued the SO2 Designation Rule.  The Rule stated that EPA was "not yet prepared to issue

24  designations" for remaining undesignated areas and would "address the designations for [those]

25  areas" in "separate future actions."  78 Fed. Reg. at 47,193.  This rule changed the status quo.

26  *See Maine*, 874 F.2d at 887.  EPA deferred designations for all remaining areas based on its

27  "comprehensive implementation strategy for the future SO2 designations actions."  78 Fed. Reg.

28  at 47,193.  As in *Maine*, EPA's decision "was based on an extensive and published

administrative record which reflects citizen and agency concerns, the intent to defer, and a rationale based on [the lack of adequate] technological and scientific information." *See id.* at 47,193-94 (citing EPA's SO2 implementation website, http://www.epa.gov/airquality/sulfurdioxide/implement.html, for information on the years-long regulatory process culminating in EPA's decision to defer designations); *Maine*, 874 F.2d at 886. EPA's statements in the preamble to the final rule and the administrative record supporting the rule "mark [its] final decision" to defer 2010 SO2 area designations, rather than to "continue the rulemaking process." *See Envtl. Def. Fund*, 448 F. Supp. at 93; *Portland Cement Ass'n*, 665 F.3d at 194.

## Conclusion

For the foregoing reasons, pursuant to Clean Air Act § 307(b)(1) and (2), the D.C. Circuit has exclusive jurisdiction to review the SO2 Designation Rule. NEDA/CAP and the Texas SO2 Working Group respectfully request that the Court decline to enter the proposed consent decree and dismiss this case for lack of jurisdiction.

Respectfully submitted this 12th day of September, 2014.

/s/ Kevin M. Sadler
Kevin M. Sadler (SBN 283765)
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
(650) 739-7518
kevin.sadler@bakerbotts.com
*Attorney for Texas SO2 Working Group*

Leslie Sue Ritts (pro hac vice forthcoming)
RITTS LAW GROUP, PLLC
620 Fort Williams Parkway
Alexandria, Virginia 22304
(703) 823-2292
LSRitts@rittslawgroup.com
*Attorney for NEDA/CAP*

1

### **CERTIFICATE OF SERVICE**

2

3

    The undersigned hereby certifies that on September 12, 2014, the foregoing document was filed with the CM/ECF system for the United States District Court for the Northern District of California and was thereby served upon counsel of record for all parties.

4

5

                                  */s/ Kevin M. Sadler*
                                  Kevin M. Sadler

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28